# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GS HOLISTIC, LLC,

    Plaintiff,

v.

SPLASH DISTRIBUTORS, LLC and SHAHED SHAIK,

    Defendants.

Case No. 24-CV-1160-JPS

**ORDER**

**1. INTRODUCTION**

  In September 2024, Plaintiff GS Holistic, LLC ("GS") sued Defendants Splash Distributors, LLC ("Splash") and Shahed Shaik ("Shaik") (together, "Defendants") for trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., and for design patent infringement in violation of the patent laws of the United States, 35 U.S.C. §§ 1 et seq. ECF No. 1. Defendants failed to file a responsive pleading or otherwise defend against the action following timely service of process. ECF Nos. 6 and 7; Fed. R. Civ. P. 12(a)(1)(A)(i). In October 2024, GS requested, and the Clerk of Court entered, default against Defendants. ECF No. 8 and Oct. 31, 2024 docket entry. Prior to GS moving for default judgment, Defendants moved to vacate the entry of default against them, ECF Nos. 11–13, and the Court granted that motion as to Shaik but denied it as to Splash, ECF No. 22. Accordingly, the Clerk's entry of default as to Splash still stands.

  In February 2025, GS served Splash, against whom default had been entered, with a subpoena for certain documents. ECF No. 24 at 2. Splash

served its objections and responses to each of GS' requests in March 2025. *Id.* GS attempted to meet and confer with Splash in April 2025 about the discovery requests but was told that Splash opposed the relief GS sought. *Id.*; ECF No. 25. At the end of April 2025, GS moved to compel production of documents from Splash that it asserts are relevant to its damages calculations in moving for default judgment. ECF Nos. 23 and 24. Splash opposed the motion, ECF No. 33, and GS replied, ECF No. 34. The motion is accordingly ripe for review and, for the reasons discussed herein, will be granted in part and denied in part.

### 2. FACTUAL BACKGROUND

GS sues Defendants for trademark infringement, false designation of origin and unfair competition, and design patent infringement. ECF No. 1. First, GS alleges that Defendants "have offered two types of counterfeit [GS] goods: counterfeit gravity infuser waterpipes and counterfeit Kompact gravity infuser waterpipes, both bearing imitations of the Stündenglass Trademarks that were not made or authorized by GS." *Id.* at 6. These counterfeit goods bear "Infringing Marks," which are "identical with or substantially indistinguishable from, the Stündenglass Trademarks." *Id.* at 7. The counterfeit goods are further "almost identical to authentic [GS] products." *Id.*

On December 29, 2022, a GS investigator visited a Splash facility and observed at least 45 Kompact Stündenglass gravity infuser waterpipes and "an excess" of gravity infuser waterpipes, all of which bore Stündenglass Trademarks. *Id.* at 7–8; *see also* ECF No. 1-7. The investigator purchased multiple of these units, with each costing him $120.00. ECF No. 1 at 7. Splash has "distributed, provided, marketed, advertised, promoted, offered for sale, and sold [counterfeit Stündenglass] gravity infuser waterpipes . . .

through its wholesale location" and through its "website and social media promotion." *Id.* at 10, 11. Splash has further "sold, offered for sale, distributed and advertised counterfeit [Stündenglass] gravity infuser waterpipes . . . to various third-party retailers without advising them that the goods were counterfeit." *Id.* at 10. One such third-party retailer is Vaper Zone LLC. *Id.* Those third-party retailers then sold counterfeit Stündenglass goods. *Id.* at 10–11.

Splash's use of the Stündenglass Trademarks began after their registration, and "[n]either GS, nor any of its authorized agents, have consented to [its] use of the Stündenglass Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof." *Id.* at 8–9. GS alleges that Splash's sale of these counterfeit goods "was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase" those goods, *id.* at 9, and that Splash has "directly and proximately caused" GS damages by its direct sale of counterfeit Stündenglass goods and also "contributorily caused harm to GS through third party retailer sales" of counterfeit goods. *Id.* at 12–13.

GS alleges that these facts constitute a violation of the Lanham Act, specifically for direct and contributory trademark infringement and counterfeiting under 15 U.S.C. § 1114 and for federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a). *Id.* at 18–21. It contends that it is entitled to injunctive relief under 15 U.S.C. § 1116 as well as disgorgement of profits, statutory damages, treble damages, and costs of the action under 15 U.S.C. § 1117. *Id.* at 23–26.

In addition to importing and selling counterfeit goods bearing Stündenglass Trademarks, Splash also imported, distributed, sold, and advertised counterfeit goods that "implemented the unauthorized use of

Page 3 of 17
Case 2:24-cv-01160-JPS   Filed 09/23/25   Page 3 of 17   Document 42

GS' patented designs." *Id.* at 15–16. Specifically, Splash offered gravity infuser waterpipes that infringed on GS' 'D817 and 'D804 patents (the "Infringing Products"). *Id.* at 16–17. On December 29, 2022, a GS investigator visited a Splash facility and observed at least 45 Infringing Products *Id.* at 16. Splash sold three of these units to the investigator for $120.00 each. *Id.* In addition to offering the Infringing Products for sale, Splash also distributed them to third party retailers, such as Vaper Zone LLC. *Id.* at 18. GS contends that Splash has accordingly "contributorily caused harm to GS through third party retailer sales of the Infringing Products distributed to them by" Splash. *Id.*

GS contends that Splash's infringement entitles it to "a reasonable royalty" pursuant to 35 U.S.C. § 284 and "all remedies for design patent infringement permitted under 35 U.S.C. § 289." *Id.* at 22. GS further alleges that Splash's infringement of GS' patents was willful, entitling it to "enhanced damages and attorneys' fees." *Id.* GS also seeks injunctive relief to enjoin Splash's continued patent infringement of the 'D817 and 'D804 patents. *Id.* at 23.

### 3. LEGAL STANDARD

The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Despite the liberal breadth of discovery allowed under Rule 26 of the Federal Rules of Civil Procedure, a proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021) (citing *West v. Miller*, No. 05C4977, 2006 WL 2349988 (N.D. Ill. Aug. 11, 2006) and *United States v.*

*Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993)). Once that initial burden is met, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citing *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)); *see also Vander Pas v. Bd. of Regents of the Univ. of Wis. Sys.*, 664 F. Supp. 3d 893, 909 (E.D. Wis. 2023) (citing *Sandoval v. Bridge Terminal Trans., Inc.*, No. 14-CV-639, 2015 WL 3650644, at *1 (E.D. Wis. June 10, 2015)).

"Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) . . . empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(2)). "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Id.* (quoting *Rowlin v. Alabama*, 200 F.R.D. 459, 461 (M.D. Ala. 2001), Fed. R. Civ. P. 26 advisory committee notes, and 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2008.1 (1994)).

"District courts have broad discretion in matters relating to discovery." *Id.* (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001) and *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)). Accordingly, "[t]he district court may grant or deny the motion in whole or in part, [or] . . . fashion a ruling appropriate for the circumstances of the

case." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)).

**4. ANALYSIS**

In moving to compel, Plaintiff requests first that the Court order Splash to produce documents responsive to its subpoena requests 1–4, 6–9, 18, and 20–21; and second that the Court order Splash to pay for Plaintiffs' costs and attorneys' fees in preparing GS' motion to compel. ECF No. 23 at 2. Splash contends that none of GS' requests are appropriately tailored to this litigation and the allegations in GS' complaint and therefore opposes the motion. ECF No. 33. The Court addresses each request in turn.

### 4.1 Order Compelling Splash to Respond to GS's Subpoena Requests

The Court first notes that this case is in a default posture as to Splash, so the relevant discovery pertains only to damages. That is because "[u]pon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) and 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2688, at 58–59 (3d ed. 1998 & Supp. 2012)). While "damages must be proved unless they are liquidated or capable of calculation," *id.* (quoting *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (internal bracketing omitted)), "the defaulting party is liable only for those damages that arise from the acts and injuries that were pleaded," *id.* (quoting 10 MOORE'S FEDERAL PRACTICE § 55.32[1][c] (3d. ed. 2012)).

### 4.1.1 Document Request No. 1

GS first moves to compel the following:

[a]ny and all receipts, invoices or other documenting records containing the following . . . SKUs from the past five years:

> a. "GRAVITY01";
> b. "GRAVITY02";
> c. "GRAVITY03";
> d. "GRAVITY04";
> e. "GRAVITY05"; and/or
> f. "GRAVITYKOMPA"

ECF No. 24 at 4. GS avers that the above SKUs were "listed on [Splash's] invoices for sale of the counterfeit Stündenglass gravity hookahs to both GS' investigator, and to various retail stores in [the Eastern District of Wisconsin] which informed GS that [Splash] supplied them with the counterfeit goods." *Id.* at 5. Splash argues that GS provides no evidence to support that these SKUs relate to counterfeit Stündenglass products, ECF No. 33 at 9, but GS replies by providing invoices from Splash distributors that utilize the above-listed SKUs with descriptions indicating the items are gravity hookahs, ECF No. 34-2. GS further explains that these invoices are "[t]rue and correct copies of invoices obtained from stores verified to have sold counterfeit Stündenglass gravity hookahs obtained" from Splash. ECF No. 34 at 5. GS argues that this request is reasonably limited in scope because it covers documents going back to 2020, which is the year when GS first started offering its Stündenglass gravity infusers in the United States. ECF No. 24 at 6.

The Court finds that this request seeks relevant documents and Splash has failed to demonstrate why the request is improper. The Court will accordingly order Splash to produce all documents responsive to this

request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to the above SKUs. GS has not provided any basis for why additional information would be relevant to its damages calculation, which is the only thing at issue against Splash at this juncture. *Wehrs*, 688 F.3d at 892 (citations omitted).

### 4.1.2 Document Request No. 2

GS moves to compel production of

> [a]ny and all receipts, invoices or other documenting records containing the following product descriptions for the past five years:
>
> > a. GRAVITY HOOKAH; or
> > b. GRAVITY KOMPAC HOOKAH

ECF No. 24 at 6. GS argues that the documents sought by this request "directly relate to the allegedly counterfeit products at issue." *Id.* at 7. The Splash invoices that GS provides repeatedly use these descriptions. ECF No. 34-2 at 19–20.[1] In response, Splash argues that this request seeks documents that are not relevant to GS' claims. ECF No. 33 at 4. It provides images of non-infringing hookahs that it asserts fit GS' definition for a gravity hookah/gravity infuser/gravity bong—which GS asserts all mean the same thing, *see* ECF No. 23-1 at 9—namely that they all "use the movement of water, creating negative pressure, and pull air through an opening." ECF No. 33 at 4–5. Splash argues that this demonstrates "the issue," with GS' request, namely that it "casts an enormously wide net" that would "force[] [Splash] to turn over essentially all documents relating to its

---

[1] The invoices reflect that Splash uses the description "GRAVITY KOMPACT HOOKAH" rather than "GRAVITY KOMPAC HOOKAH." *See* ECF No. 34-2.

products which utilize water to pull air through an opening." *Id.* at 5–6 (emphasis omitted).

The Court is not convinced. The images Splash provides demonstrate traditional hookahs, which do not utilize gravity to create negative pressure but rather rely on suction and the user's inhalation to pull air. *See* ECF No. 34 at 4 ("[A]lthough 'gravity hookahs' are a type of waterpipe, they are unique and constitute a subcategory of waterpipes as their working principles, which use the flow of water to create negative pressure, are different than the rest of the waterpipes."). Splash has not provided any examples of products that would fit GS' definition of "gravity hookah," "gravity infuser," "gravity bong" yet would not infringe on GS' patents at issue. The creation of negative pressure is made possible only by the rotation of GS' product, a feature that none of Splash's examples contain. Splash's concerns about overbreadth and irrelevancy are misplaced.

Accordingly, the Court will consider any discovery relating specifically to invoices and records that contain the term or refer to a "gravity waterpipe," "gravity hookah," "gravity infuser," or "gravity bong" to be relevant and proportional to the damages discovery GS must conduct. The Court will accordingly order Splash to provide all documents that are responsive to this request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to the above terms and products. *See supra* Section 4.1.1.

#### 4.1.3 Document Request No. 3

Plaintiff moves to compel production of "[a]ny and all receipts, invoices or other documenting records related to purchases of any and all

Page 9 of 17
Case 2:24-cv-01160-JPS   Filed 09/23/25   Page 9 of 17   Document 42

gravity hookahs with a wholesale price of more than $50.00 over the last 5 years." ECF No. 24 at 7. Splash argues that the phrase "relating to" in this request renders it "overly broad and unduly burdensome." ECF No. 33 at 5–6 (citing *Dauska v. Green Bay Packaging, Inc.*, 291 F.R.D. 251, 261 (E.D. Wis. 2013)). GS contends that Splash mischaracterizes the law and that omnibus phrases such as "relating to" are overly broad only when they modify categories of documents that are themselves general, which is not the case here. ECF No. 34 at 2.

The Court agrees with GS here. "[A] request that uses an omnibus phrase to modify a sufficiently specific type of information or group of documents will not be deemed objectionable on its face." *Dauska*, 291 F.R.D. at 261 (quoting *Audiotext Comms. v. U.S. Telecom, Inc.*, No. CIV A. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995)). This request uses the phrase "relating to" as a modifier for a narrow set of documents, namely receipts, records, or documenting records for purchases of gravity hookahs with a wholesale price of more than $50.00 within the last five years. Splash's argument as to the term "relating to" here is therefore unavailing.

Because the parties' other arguments relating to this request have been addressed *supra* Section 4.1.2, the Court will similarly find that this request seeks relevant information and is narrowly tailored to GS' discovery needs in this case. It will accordingly order Splash to produce all documents that are responsive to this request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to the above term and products. *See supra* Section 4.1.1.

#### 4.1.4 Document Request No. 4

GS moves to compel production of "[a]ny and all import records evidencing the importation, into the United States of America, of gravity hookahs, over the last 5 years." ECF No. 24 at 9. The parties' arguments for this request are duplicative of those related to those discussed *supra* Sections 4.1.2 and 4.1.3. The Court will similarly hold that this request is relevant and narrowly tailored to the needs of this case and will order Splash to produce all documents that are responsive to this request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to the above term and products. *See supra* Section 4.1.1.

#### 4.1.5 Document Request No. 6

GS moves to compel production of "[a]ny and all shipment logs, shipping documents, and order confirmation emails, related to the sale of gravity waterpipes from [Splash] to customers in the last 5 years." ECF No. 24 at 11. The parties' arguments for this request are duplicative of those related to those discussed *supra* Sections 4.1.2 and 4.1.3. The Court will similarly hold that this request is relevant and narrowly tailored to the needs of this case and will order Splash to produce all documents that are responsive to this request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to gravity waterpipes. *See supra* Section 4.1.1.

#### 4.1.6 Document Request No. 7

Plaintiff moves to compel production of "[a]ny and all records evidencing complaints related to the sale of waterpipes from [Splash] to customers in the last 5 years." ECF No. 24 at 13. GS contends these documents are relevant because "customer complaints relating to [Splash's]

Page 11 of 17
Case 2:24-cv-01160-JPS    Filed 09/23/25    Page 11 of 17    Document 42

sale of counterfeit goods would underscore a history of counterfeiting and be further suggestive that [Splash] has willfully sold the counterfeit goods." *Id.* at 13–14. Splash argues that this request is overbroad because not every waterpipe infringes on GS' patented designs or trademarks. ECF No. 33 at 6. GS argues that it "is not seeking documents regarding 'every waterpipe [Splash] sells or has sold,'" ECF No. 34 at 4, but that assertion is belied by the wording of this request, which requests complaints relating to the sale of "waterpipes" generally as opposed to "gravity waterpipes," which is the specific kind of products at issue in this case.

Because the requested documents could be pertinent to the damages calculation, the Court will order Splash to produce responsive documents but will modify the request to relate only to the sale of "gravity waterpipes," which includes "gravity hookahs," "gravity infusers," and "gravity bongs." The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, price information, and the substance of any complaints received related to gravity waterpipes. *See supra* Section 4.1.1.

### 4.1.7 Document Request No. 8

Plaintiff moves to compel production of

> [a]ny and all receipts, invoices, purchase orders, or other documenting records related to sales of all waterpipes including all gravity waterpipes (also known as infusers) to any and all businesses which sell waterpipes to the public in the last 5 years. This request should be limited to all such businesses which are located in the United States of America.

ECF No. 24 at 14. Similar to document request number 7, *see supra* Section 4.1.6, this request is overbroad because it seeks discovery related to "all waterpipes." For the same reasons discussed *supra* Section 4.1.6, the Court

will narrow this request to only apply to "gravity waterpipes," which includes "gravity hookahs," "gravity infusers," and "gravity bongs." It will order Splash to produce all documents responsive to this modified request and will further permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to gravity waterpipes. *See supra* Section 4.1.1.

### 4.1.8 Document Request No. 9

Plaintiff moves to compel production of

> [a]ny and all communications between [Splash] and all businesses which sell waterpipes to the public relating to sales of all waterpipes including all gravity waterpipes (also known as infusers). Communications shall include, but are not limited to, emails, text messages, WhatsApp messages, faxes, notes, letters, invoices, and phone logs. This request should be limited to all such businesses which are located in the United States of America in which the communications occurred in the last 5 years.

ECF No. 24 at 15. GS argues that this request is relevant "to establish the extent of [Splash's] infringement as well as whether any retailer notified [Splash] that they had sold counterfeit Stündenglass gravity waterpipes prior to the instant action." *Id.* at 16. Splash objects to the term "[c]ommunications" as being overbroad, again citing *Dauska*, 291 F.R.D. at 261. ECF No. 33 at 5–6. The Court will address Splash's concern by removing the words "but are not limited to" from the above request such that the second sentence will read "[c]ommunications shall include emails, text messages, WhatsApp messages, faxes, notes, letters, invoices, and phone logs." The Court will further limit the request to only "gravity waterpipes," which shall include "gravity hookahs," "gravity infusers," and "gravity bongs." Splash will be ordered to produce all documents

Page 13 of 17

Case 2:24-cv-01160-JPS     Filed 09/23/25     Page 13 of 17     Document 42

responsive to this modified request and will permit Splash to redact the documents so that the only information provided is the dates, quantity, price information, and the substance of any communications pertaining to gravity waterpipes. *See supra* Section 4.1.1.

### 4.1.9 Document Request No. 18

Plaintiff moves to compel production of "[a]ny and all communications between [Splash] and any vendors or dealers who supply [Splash], or previously supplied [Splash], with Stündenglass waterpipes. Communications shall include, but are not limited to, emails, faxes, notes, letters, invoices, phone logs." ECF No. 24 at 17. GS argues that this request is relevant to "establish the extent of [Splash's] infringement, shed light on [Splash's] knowledge, and reveal whether any other domestic distributors of counterfeit Stündenglass gravity hookahs are involved in the ongoing infringement." *Id.*

The Court is concerned with GS' expressed intent to utilize discovery in this case to identify non-party infringers. GS has not indicated how this is "relevant to any . . . claim or defense" in *this* case. Fed. R. Civ. P. 26(b)(1). Also, this request is overly broad as it does not merely seek communications related to gravity waterpipes but rather "all communications between [Splash]" and its Stündenglass waterpipe suppliers, which could include swaths of irrelevant communications that relate to other types of products. Because this request is not proportional to the needs of the case, the Court will deny GS' motion to compel as to this request.

### 4.1.10 Document Request No. 20

Plaintiff moves to compel production of "[a]ny and all records inventory relating to gravity hookahs maintained by [Splash] for the past five years." ECF No. 24 at 18. Because the parties' other arguments relating

to this request have been addressed *supra* Sections 4.1.2 and 4.1.3, the Court will similarly find that this request seeks relevant information and is narrowly tailored to GS' discovery needs in this case. It will accordingly order Splash to produce all documents that are responsive to this request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to the above term and products. *See supra* Section 4.1.1.

### 4.1.11 Document Request No. 21

Plaintiff moves to compel production of "[a]ny and all documents evidencing [Splash's] gross sales of gravity hookahs for the last 5 years." ECF No. 24 at 19. Because the parties' other arguments relating to this request have been addressed *supra* Sections 4.1.2 and 4.1.3, the Court will similarly find that this request seeks relevant information and is narrowly tailored to GS' discovery needs in this case. It will accordingly order Splash to produce all documents that are responsive to this request. The Court will permit Splash to redact the documents so that the only information provided is the dates, quantity, and price information related to the above term and products. *See supra* Section 4.1.1.

### 4.2 Award of Reasonable Attorneys' Fees to GS

A party who prevails in compelling discovery is entitled to a mandatory award of attorneys' fees incurred in moving to compel unless (1) "the movant filed the motion before attempting in good faith to obtain the discovery without court action," (2) "the opposing party's responses or objections were substantially justified," or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). The Court must "require the party . . . whose conduct necessitated the motion . . . to pay the movant[] . . . ." *Id.*

The Court finds in this instance that it would be inappropriate to order Splash to pay GS' attorneys' fees incurred in moving to compel. This is because, as demonstrated by the Court's modifications and partial denial, some of GS' requests were overbroad and unduly burdensome, and at least some of Splash's objections and refusals to produce documents were substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii). Further, the Court is not convinced that GS meets the threshold of conferring in good faith prior to moving to compel. Fed. R. Civ. P. 37(a)(5)(A)(i). While GS did confer with Splash before moving to compel, Splash notes in its brief that it indicated it would be willing to provide documents to a more narrowly tailored definition of the products and issue and GS was unwilling to adjust its definition. ECF No. 33 at 9. It appears that both parties could have conferred in a more reasonable manner—GS by modifying its requests to be more narrowly tailored and Splash by producing at least some responsive documents pertaining to the products at issue. Because both parties' conduct seems to have contributed to the Court needing to intervene here, it would be unjust to award attorneys' fees to either party. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii). The parties shall therefore cover their own expenses in litigating this motion.

**5. CONCLUSION**

For the reasons stated above, the Court will grant in part and deny in part GS' motion to compel, modifying GS' requests and permitting Splash to redact its documents as specified *supra* Section 4.1 Splash must serve amended discovery responses and produce responsive documents in accordance with this Order on or before **October 23, 2025**. Because both parties' conduct necessitated the instant motion, the Court will deny GS' motion for attorneys' fees. Further, and in accordance with its May 8, 2025

Page 16 of 17
Case 2:24-cv-01160-JPS   Filed 09/23/25   Page 16 of 17   Document 42

text order, the Court will reset the deadline for GS to move for default judgment as to Splash. GS shall so move on or before **December 22, 2025**.

Accordingly,

**IT IS ORDERED** that Plaintiff GS Holistic, LLC's Motion to Compel, ECF No. 23, is **GRANTED in part and DENIED in part;** it is **GRANTED** to the extent it seeks an order compelling discovery in response to its requests numbers 1–4, 6, and 20–21; it is **GRANTED in part** to the extent it seeks an order compelling discovery in response to its requests numbers 7–9, as modified by the Court; and it is **DENIED** to the extent it seeks an order compelling discovery in response to its request number 18 and to the extent it seeks attorneys' fees;

**IT IS FURTHER ORDERED** that Defendant Splash Distributors, LLC, shall provide amended discovery responses to GS Holistic's subpoena requests numbers 1–4, 6–9, and 20–21, as specified in this Order, and will produce responsive documents on or before **October 23, 2025**; and

**IT IS FURTHER ORDERED** that Plaintiff GS Holistic, LLC shall move for default judgment as to Defendant Splash Distributors, LLC on or before **December 22, 2025**.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge